Argued and submitted March 18, reversed and denial reinstated June 15, 1988

In the Matter of the Compensation of
Sheila C. Owsley (Karbonski), Claimant.

SAFEWAY STORES,
*Petitioner,*

*v.*

OWSLEY (KARBONSKI),
*Respondent.*

(WCB 85-13054; CA A44758)

756 P2d 48

Kenneth L. Kleinsmith, Portland, argued the cause for petitioner. With him on the brief was Robert J. Radler, Portland.

Larry Schucht, Portland, argued the cause for respondent. On the brief was Marianne Bottini, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Employer seeks review of an order of the Workers' Compensation Board affirming and adopting the referee's determination that claimant is entitled to benefits for temporary total disability and to a penalty and attorney fees for employer's alleged unreasonable termination of benefits.

Claimant suffered a compensable injury to her little finger at a time when she was earning $3.67 per hour. After two surgeries, she returned to work part-time, and employer began paying temporary partial disability benefits. In January, 1985, and in June, 1985, claimant received increases in her hourly pay as a result of union contract requirements. On August 7, 1985, she was fired for reasons unrelated to her claim. At that time, she was still working part-time, at an hourly wage of $5.08. Her total weekly wages were more than before the injury. Employer paid temporary partial disability benefits through August 3, 1985.

On October 3, 1985, after having received a request from claimant for temporary partial disability benefits, employer issued a partial denial of benefits for time loss after August 3, 1985, on the ground that, if claimant had not been fired, her weekly wages after that date would have exceeded her weekly wages at the time of the injury and that, therefore, she was not entitled to benefits under the terms of OAR 436-60-030. On December 6, 1985, the claim was closed with an award of temporary total disability from November 29, 1984, through December 16, 1984, and temporary partial disability from December 17, 1984, through September 17, 1985. Employer did not pay any benefits for the period between August 3, and September 17, 1985.

The Board, in adopting the referee's opinion, determined that employer was not authorized to terminate benefits unilaterally when claimant was fired. It awarded benefits for temporary partial disability based on her wages at the time of the injury. It also assessed a penalty and attorney fees for employer's alleged unreasonable termination of benefits.

Claimant's attorney stated at the hearing that claimant was seeking benefits for time loss after August 7, 1985, the date when she was terminated, but was not challenging the amount of temporary partial disability paid before that date.

Despite that, the Board determined that employer owed claimant benefits for temporary partial disability for the week before she was terminated. Employer contends that the Board should not have reached that issue, because claimant waived it. We conclude that the Board was free to make any disposition of the case that it deemed appropriate. *Destael v. Nicolai,* 80 Or App 596, 600, 723 P2d 348 (1986); *Russell v. A & D Terminals,* 50 Or App 27, 31, 621 P2d 1221 (1981). It had before it the general issue of entitlement to temporary partial disability benefits and could properly consider whether benefits for the period before claimant's termination had been calculated correctly.

ORS 656.212 provides:

"When the disability is or becomes partial only and is temporary in character, the worker shall receive for a period not exceeding two years that proportion of the payments provided for temporary total disability which the loss of earning power at any kind of work bears to the earning power existing at the time of the occurrence of the injury."

The formula for calculating benefits for temporary partial disability is in OAR 436-60-030, which, at the relevant time, provided, in part:

"(1)    The rate of temporary partial disability compensation due a worker shall be determined by:

"(a)    Subtracting the post-injury wage earnings available from any kind of work; from

"(b)    the wage earnings from the employment at the time of, and giving rise to the injuries; then

"(c)    dividing the difference by the wage earnings in subsection (b) to arrive at the percentage of loss of earning power; then

"(d)    multiplying the current temporary total disability compensation rate by the percentage of loss of earning power.

"(2)    *If the post-injury wage earnings are equal to or greater than the wage earnings at the time of injury, no temporary disability compensation is due.*" (Emphasis supplied.)

Employer contends that claimant was not entitled to benefits as they are calculated under the rule and that it could therefore properly stop paying benefits.

Assuming for the moment that claimant had not been

fired, we must first determine whether she would have been entitled to benefits for temporary partial disability. In our view, that issue has been resolved against claimant in *Fink v. Metropolitan Public Defender,* 67 Or App 79, 676 P2d 934, *rev den* 296 Or 829 (1984), where we upheld a previous version of OAR 436-60-030, then codified as OAR 436-54-225. We stated that the rule was consistent with ORS 656.212 and required the conclusion that a claimant whose weekly wage at the time of partial disability is greater than at the time of the injury could not recover benefits for temporary partial disability despite the fact that the claimant was not working as many hours as she had been working before the injury. We held that "earning power" as used in ORS 656.212 refers to a worker's pre-injury wages. We rejected the "hours of work" concept as relevant to the question of diminished "earning power." We stated that the relevant inquiry is not whether the claimant was able to work as many hours as before the injury, but whether the claimant's actual earnings had been diminished:

> "We construe ORS 656.212 to provide that compensation for temporary partial disability of a worker who is recovering from a compensable injury but is nonetheless capable of earning wages and is employed is to be proportionate to the decrease in the worker's actual earnings.

> "The formula established by *former* OAR 436-54-225 for computing loss of earning power comports with our construction of ORS 656.212. The rule provided for an adjustment of the compensation to be paid for the difference between the wages the worker would have received for temporary total disability under ORS 656.210 [which is computed on the basis of the claimant's actual wages at the time of the injury]. If a claimant's post-injury wages exceed the claimant's pre-injury wages, the claimant suffers no loss of earning power and is not entitled to temporary partial disability benefits."

Although *Fink* involved interim compensation, the same analysis is applicable here. Claimant's weekly wages were more during the period for which she seeks compensation than at the time of the injury. Therefore, she is not entitled to benefits for temporary partial disability. The Board's order determining otherwise and assessing a penalty and related attorney fees is therefore reversed, and employer's denial is reinstated.

We reject claimant's contention that employer was

required to begin paying temporary partial disability benefits again after she was fired. *See Noffsinger v. Yoncalla Timber Products,* 88 Or App 118, 744 P2d 295 (1987), *rev den* 305 Or 102 (1988); *Nix v. SAIF,* 80 Or App 656, 723 P2d 366, *rev den* 302 Or 158 (1986). Even assuming that claimant's termination did not preclude recovery of benefits for temporary partial disability, she would have been entitled only to the amount that she could have received on account of her disability had she not been fired. In this case, that is nothing.

Reversed; denial reinstated.