Argued and submitted November 18, 1991, affirmed February 3, 1993

In the Matter of the Compensation of
Peggy A. Dawes, Claimant.

Peggy A. DAWES,
*Petitioner,*

*v.*

Nevi I. SUMMERS
and EBI Companies,
*Respondents.*

(89-14499; CA A68220)

845 P2d 1308

Darris K. Rowell, Salem, argued the cause for petitioner. With him on the brief was Olson, Rowell & Walsh, Salem.

Jerald P. Keene, Portland, argued the cause for respondents. With him on the brief was Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C., Portland.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

Durham, J., concurring in part, dissenting in part.

## DEITS, J.

Claimant seeks review of an order of the Workers' Compensation Board. She assigns as error the Board's denial of a penalty and attorney fees for employer's failure to pay temporary disability compensation, its allowance of recovery of an overpayment against future awards of permanent disability and its finding that claimant had been terminated for reasons unrelated to her injury. We affirm.

Claimant was released to return to work after sustaining a compensable injury. She returned to her job as a housekeeper and cook on April 1, 1987. Four days later, she was terminated. She had failed to report to work for two of her scheduled days and had reported late the other two days. She never contacted employer to tell her of the situation, but instead had her son call one of the days she was absent to announce that she would not come to work that day.[1] She did not seek other work. Employer unilaterally terminated temporary disability benefits on April 27, 1987. A determination order dated June 28, 1989, awarded claimant temporary disability, stating in part:

"The department orders you entitled to additional compensation for temporary disability, less time worked, as follows:

"For temporary total disability from Sep [sic] 5, 1984 through May 7, 1986, per stipulation and order dated Feb 26, 1986 and Dec 6, 1988, and for temporary total from May 8, 1986 through May 16, 1989.

"* * * * *

"Deduction of overpaid temporary disability, if any, from unpaid permanent disability is approved. Your condition was found to be medically stationary on May 16, 1988."

Employer did not pay any temporary disability benefits for the period after claimant was fired. Claimant requested a hearing. She argued that her claim was prematurely closed and sought enforcement of the determination order, seeking temporary disability compensation for April 27, 1987, through May 16, 1989. Employer argued that,

---

[1] The Board made no specific finding as to whether claimant voluntarily left the work force before she was fired. It found that "claimant was released to modified work which she left for reasons unrelated to her compensable condition."

because claimant was terminated for reasons unrelated to her injury, she was not entitled to temporary disability after the date of termination. The referee agreed that claimant was fired because of her failure to report to work and concluded that employer was "not obligated to recommence temporary disability after April 5, 1987." The referee allowed employer an offset for temporary benefits paid after that date.

On reconsideration, the referee decided that, even if employer disputed claimant's entitlement to benefits, it was still required to pay in accordance with the determination order until it could successfully contest entitlement, at which time it would be entitled to an offset against future awards. The referee further found that employer's failure to comply with the determination order was unreasonable and assessed a penalty of 25 percent of the compensation owed and unpaid and $400 in fees to claimant's attorney.[2]

Claimant requested Board review, arguing that the referee erred in allowing employer to offset temporary benefits that claimant was found not to be entitled to. Employer also sought review, arguing that the referee had erred in concluding that it was required to pay temporary disability benefits from April 5, 1987, to May 16, 1989, and in assessing a penalty and attorney fees. The Board adopted the conclusions and reasoning of the referee concerning employer's obligation to pay temporary benefits after April 5, 1987, and the award of an offset. However, it reversed the assessment of a penalty and attorney fees, concluding that the language of the determination order, as it pertained to the temporary disability award, was ambiguous. It found that employer "had a legitimate doubt in regards [sic] to its duty to pay temporary total disability pursuant to the Determination Order" and that its failure to pay was not unreasonable.

 Claimant first assigns error to the Board's refusal to assess a penalty and attorney fees for employer's failure to pay temporary disability for the period after claimant was terminated. Under the applicable laws, penalties and attorney fees were appropriate when an employer unreasonably

---

[2] The referee also found claimant to be medically stationary as of May 16, 1989. The Board adopted this finding, and claimant does not challenge it on review.

delayed or refused to pay compensation.[3] ORS 656.262(10); ORS 656.382(1). However, if an employer's failure to pay is premised on a legitimate doubt as to its liability, its conduct is not unreasonable. *See Emery v. Adjustco*, 82 Or App 101, 107, 727 P2d 622 (1986).

■■ Employer contends that it interpreted the phrase "less time worked" in the portion of the determination order requiring it to pay temporary disability to include the time during which claimant would have continued to work but for her termination. Accordingly, it concluded that the determination order did not require it to pay temporary disability benefits for the time after claimant was fired. Employer concedes that "events have shown that it was incorrect to withhold benefits" but argues that its interpretation of the order was not unreasonable. We agree. Employer should have continued to pay temporary disability and then sought to recover the payments to which claimant was not entitled as offsets against future benefits. Nevertheless, as the Board concluded, the language of the determination order was ambiguous and, therefore, employer's failure to pay was based on a legitimate doubt as to its liability. Denial of penalties and attorney fees was proper.

■ In her second assignment, claimant contends that the Board erred in determining that she was not entitled to temporary disability benefits for the time after she was terminated from work and in allowing employer an overpayment against future awards of permanent disability. The Board adhered to the referee's holding that, under *Safeway Stores v. Owsley*, 91 Or App 475, 480, 756 P2d 48 (1988), a worker who returns to work and is thereafter terminated for non-claim reasons is not entitled to temporary benefits under ORS 656.212. Claimant argues, however, that that holding is inconsistent with the Board's administrative rules, which she contends should control over the case law.

Claimant points out that OAR 436-60-030(3) provides that an insurer shall pay temporary disability compensation "as is due" in accordance with OAR 436-60-030(1) and

---

[3] The statutes have since been amended. Or Laws 1990, ch 2, §§ 15, 23. *See Oliver v. Norstar Inc.*, 116 Or App 333, 840 P2d 1382 (1992).

OAR 436-60-030(2).[4] She asserts that, under those rules, an employer must continue to pay temporary partial compensation until (1) a physician verifies that the worker is temporarily totally disabled, (2) temporary disability benefits are terminated by a determination order or notice of claim closure or (3) compensation has been paid for two years. OAR 436-60-030(4).[5]

■ Temporary disability benefits are to replace wages lost because of a compensable injury. *Roseburg Forest Products v. Wilson*, 110 Or App 72, 75, 821 P2d 426 (1991). Here, no wages, in whole or in part, were lost because of claimant's compensable injury. Rather, she was fired for reasons not related to the claim. Therefore, no temporary compensation was "due." *See Noffsinger v. Yoncalla Timber Products*, 88 Or App 118, 744 P2d 295 (1987), *rev den* 305 Or 102 (1988). We conclude that the rules that claimant relies on are not inconsistent with the holding in *Safeway Stores v. Owsley, supra*.[6]

Finally, claimant contends that the Board erred in finding that she was terminated for reasons unrelated to her compensable injury. There is substantial evidence in the record to support the Board's finding.

Affirmed.

---

[4] At that time, OAR 436-60-030(3) provided:

"An insurer shall cease paying temporary total disability compensation and commence making payment of such temporary partial disability compensation as is due from the date an injured worker accepts and commences any kind of wage earning employment prior to claim determination."

[5] OAR 436-60-030(4) at that time provided:

"Temporary partial disability compensation payable pursuant to section (3) shall continue to be paid until:

"(a) The attending physician verifies that the worker cannot continue working and is again temporarily totally disabled;

"(b) The compensation is terminated by order of the Department or by claim closure by the insurer pursuant to ORS 656.268; or

"(c) The compensation has been paid for two years."

[6] The dissent contends that our holding is based on a misreading of *Owsley* and *Noffsinger*. Despite the dissent's attempts to read them otherwise, both cases hold that a claimant is not entitled to temporary disability benefits when the claimant leaves work for reasons not related to the compensable injury. In fact, claimant here does not assert that *Owsley* and *Noffsinger* hold otherwise. Rather, she argues that the holdings in those cases are inconsistent with the Board's rules.

**DURHAM, J.,** concurring in part, dissenting in part.

The majority holds that, by firing claimant, employer cut off her right to receive temporary disability benefits for the period after the discharge even though she was still partially disabled and losing wages as a result of her injury. The majority reaches that result by making an unwarranted extension of *Safeway Stores v. Owsley*, 91 Or App 475, 756 P2d 48 (1988), and by disregarding ORS 656.212 and Board rules that assure a right to compensation proportionate to the loss of earning power. I dissent from that holding.

The material facts are that, when claimant was fired, she had been released by her doctor to perform only modified, sedentary work, and she was receiving a reduced wage. ORS 656.212 entitled her to temporary partial disability benefits for up to two years:

"When the disability is or becomes partial only and is temporary in character, the worker shall receive for a period not exceeding two years that proportion of the payments provided for temporary total disability which the loss of earning power at any kind of work bears to the earning power existing at the time of the occurrence of the injury."

OAR 436-60-030[1] repeated the statutory guarantee:

"(1) The rate of temporary partial disability compensation due a worker shall be determined by:

"(a) Subtracting the post-injury wage earnings available from any kind of work; from

"(b) The wage earnings from the employment at the time of, and giving rise to, the injury; then

"(c) Dividing the difference by the wage earnings in subsection (b) to arrive at the percentage of loss of earning power; then

"(d) Multiplying the current temporary total disability compensation rate by the percentage of loss of earning power.

"(2) If the post-injury wage earnings are equal to or greater than the wage earnings at the time of injury, no temporary disability compensation is due.

---

[1] OAR 436-60-030 has since been amended in a way that does not affect this case.

"(3) *An insurer shall* cease paying temporary total disability compensation and *commence making payment of such temporary partial disability compensation as is due from the date an injured worker accepts and commences any kind of wage earning employment prior to claim determination.*

"(4) *Temporary partial disability compensation payable pursuant to section (3) shall continue to be paid until:*

"(a) The attending physician verifies that the worker cannot continue working and is again temporarily totally disabled:

"(b) The compensation is terminated by order of the Department or by claim closure by the insurer pursuant to ORS 656.268; or

"(c) *The compensation has been paid for two years.*" (Emphasis supplied.)

Neither the statute nor the rule makes a firing a ground for terminating temporary disability benefits.

The majority relies on *Safeway Stores v. Owsley, supra*, and *Noffsinger v. Yoncalla Timber Products*, 88 Or App 118, 744 P2d 295 (1987), *rev den* 305 Or 102 (1988), but that reliance is misplaced. In *Owsley*, an injured worker returned to part-time work. She received pay increases under a union contract that caused her part-time weekly wage to exceed her pre-injury full-time wage. She was fired for reasons unrelated to her claim and sought temporary partial disability benefits. We rejected the claim because, under OAR 436-60-030(2), "[i]f the post-injury wage earnings are equal to or greater than the wage earnings at the time of injury, no temporary disability compensation is due." *Owsley* says:

"Claimant's weekly wages were more during the period for which she seeks compensation than at the time of the injury. Therefore, she is not entitled to benefits for temporary partial disability. * * *

"We reject claimant's contention that employer was required to begin paying temporary partial disability benefits again after she was fired. *See Noffsinger v. Yoncalla Timber Products, [supra]; Nix v. SAIF*, 80 Or App 656, 723 P2d 366, *rev den* 302 Or 158 (1986). *Even assuming that claimant's termination did not preclude recovery of benefits for temporary partial disability,* she would have been entitled only to the amount that she could have received on account of her

disability had she not been fired. In this case, that is nothing." 91 Or App at 479. (Emphasis supplied.)

The italicized statement confirms that the disqualification from benefits was not based on the claimant's discharge. The court assumed that the discharge was *not* a disqualifying event. However, the majority erroneously interprets *Owsley* to hold that the claimant was disqualified because she returned to work and was "thereafter terminated for non-claim reasons." 118 Or App at 19. The majority's misreading of *Owsley* undermines its analysis of this case.

In *Noffsinger*, the injured worker returned to *regular* work and was fired for reasons unrelated to the claim:

"The evidence establishes that claimant left work at Yoncalla because he was fired, not because he was disabled. He is not precluded from working for any other employer. We conclude that he has not lost wages because of an inability to work as a result of his compensable condition and that, therefore, he is not entitled to temporary disability benefits." 88 Or App at 121.

*Noffsinger* is distinguishable, because here claimant was released to perform only modified work at a reduced wage. Unlike the claimant in *Noffsinger*, she was not capable of returning to regular work. She continued to lose wages due to the injury to the extent that her pre-injury wage exceeded her post-injury reduced wage. *Noffsinger* does not affect her right to compensation for the continuing proportionate loss of earning power attributable to a compensable injury.

The majority compounds its erroneous reading of *Owsley* and *Noffsinger* by misconstruing the phrase "as is due" in OAR 436-60-030(3). Because the majority reads *Owsley* to hold that a discharge cuts off the injured worker's right to compensation, it concludes that no compensation is "due" under the rule. However, the phrase "as is due" in subsection (3) refers to the benefit calculation formula in subsection (1) and the benefit limitation in subsection (2). Even if the phrase were meant to incorporate all conditions that limit a claimant's right to receive benefits, subsection (4) states those conditions; a firing is not among them. The majority does not explain away that inconsistency.

Finally, the majority's assertion that "no wages, in whole or in part, were lost because of claimant's compensable injury," 118 Or App at 20, ignores the fact that claimant earned a reduced wage at her modified job. She continued to suffer a wage loss due to her injury to the extent that her pay before injury exceeded her reduced wage. She is entitled to compensation for that proportionate loss of earning power.

If employer believed that claimant was no longer disabled, its proper course was to seek closure of the claim under OAR 436-60-030(4)(b) and ORS 656.268, not to unilaterally terminate benefits. The unfortunate result of the majority's decision is that it relieves the employer of the responsibility to follow legislatively preferred claim closure procedures and permits the employer to unilaterally cut off benefits while the worker is partially disabled and suffering a wage loss. I cannot concur with that result.

I concur in the affirmance of the Board's denial of penalties and attorney fees[2] and its finding that claimant was terminated for reasons unrelated to her injury. However, I would reverse the Board's determination that claimant is not entitled to temporary disability benefits after she was terminated and that employer is entitled to an offset for overpayment.

---

[2] Employer relies on *Owsley* in contending that, because claimant was fired, its denial was reasonable and did not warrant an order of penalties and attorney fees. The argument is difficult to accept, because *Owsley's* holding turned on the amount of the claimant's post-injury income, not on the fact that she was discharged. However, the Board's ruling is justified, because no case had determined whether the duty to pay compensation under OAR 436-60-030(4) to a worker performing modified work at a reduced wage was affected by a firing.