Argued and submitted November 4, 1991, reversed July 1, reconsideration denied October 14, petition for review denied November 24, 1992 (314 Or 727)

In the Matter of the Compensation of
Ellis N. Phillips, Claimant.
ROSEBURG FOREST PRODUCTS,
*Petitioner,*

*v.*

Ellis N. PHILLIPS,
*Respondent.*

(89-08868; CA A68530)

833 P2d 1359

Stafford J. Hazelett, Portland, argued the cause for petitioner. With him on the brief was Davis and Bostwick, Portland.

Michael T. Garone, Portland, argued the cause for respondent. With him on the brief was Jolles, Sokol & Bernstein, P.C., Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

**DEITS, J.**

Employer seeks review of an order of the Workers' Compensation Board (Board) requiring it to pay temporary total disability (TTD) to claimant during the time that he was on strike. We reverse.

In 1983, claimant suffered a compensable injury, which employer accepted. The claim was closed in 1986 by a determination order that awarded compensation for temporary and permanent disability. Claimant made an aggravation claim in 1987 that was accepted and closed in the same year. He continued to work full time as an electrician until he went on strike in January, 1989. During the strike, he did not look for or perform other work. He stipulated that, even if work with employer had been available during the strike, he would not have crossed the picket line.

In March, 1989, claimant returned to his doctor, who requested authorization for surgery because of an aggravation of the 1983 injury. Employer authorized the surgery and related medical services but denied claimant's request for TTD benefits during the time that he was participating in the strike, reasoning that claimant had voluntarily withdrawn from the labor market. Claimant had surgery on April 4, 1989. The strike ended on May 15, 1989. Employer began payment of TTD benefits on May 16, 1989. Claimant returned to regular work on June 5, 1989. He sought review of employer's denial of TTD benefits from the date of the surgery to the end of the strike.

The referee denied the claim for TTD benefits during the strike:

> "[C]laimant has failed to meet his burden of proving entitlement to temporary disability benefits for two reasons. First, during the strike, claimant was not a person engaged to furnish services for a remuneration subject to the direction and control of this or any other employer. Thus, he was not a worker. Second, as a consequence of claimant's decision to strike, he was not receiving any wages. Moreover, he was not seeking any work from which he could have earned a wage. Claimant, therefore, did not have any lost wages."

The Board concluded that claimant was still a "worker," because he "had not withdrawn from the work force prior to

his date of disability." Relying on *Dawkins v. Pacific Motor Trucking*, 308 Or 254, 778 P2d 497 (1989), it reversed the referee on the question of entitlement to TTD benefits during the strike and awarded benefits from April 4, 1989, through May 15, 1989.

Employer argues that the Board erred in concluding that claimant was a "worker" when he was on strike. We agree. In *Dawkins*, the Supreme Court explained the test for determining if a claimant is in the work force:

"A claimant is deemed to be in the work force if:

"a. The claimant is engaged in regular gainful employment; or

"b. The claimant, although not employed at the time, is willing to work and is making reasonable efforts to obtain employment * * *; or

"c. The claimant is willing to work, although not employed at the time and not making reasonable efforts to obtain employment because of a work-related injury, where such efforts would be futile." 308 Or at 258. (Citations omitted.)

It further explained that

"[a] claimant who is not employed, is not willing to be employed, or, although willing to be employed, is not making reasonable efforts to find employment (unless such efforts would be futile because of the work-related injury) has withdrawn from the work force. A claimant who, at the time of the aggravation of the work-related injury, has withdrawn from the work force is not entitled to temporary total disability." 308 Or at 258.

Applying the *Dawkins* test, we conclude that the Board erred in concluding that claimant was a worker in the work force while he was on strike. The record demonstrates, and claimant has acknowledged, that he did not seek other work and that, had he been offered work by employer, he would not have accepted it. We also conclude that claimant was not "engaged in regular gainful employment" while on strike.

To receive TTD for an aggravation of a work-related injury, a claimant must be in the work force at the time of the

aggravation. As explained in *Cutright v. Weyerhauser Co.*, 299 Or 290, 302, 702 P2d 403 (1985):

> "[A] claim for temporary total disability benefits in the absence of wage loss seeks a remedy where there is no damage. Non-workers can sustain medical expenses. They cannot lose earnings."

For the purpose of determining claimant's entitlement to temporary compensation, we conclude that he withdrew from the work force when he decided to participate in the strike. *See Pacific Motor Trucking v. Standley*, 93 Or App 204, 207, 761 P2d 930 (1988).

In *Roseburg Forest Products v. Wilson*, 110 Or App 72, 821 P2d 426 (1991), we considered an analogous question. There, the claimant had sustained a compensable injury. He was unable to work and received TTD benefits. His physician eventually approved his return to modified work. When he arrived at work, he encountered a labor dispute and refused to cross the picket line. The employer then terminated TTD. The issue in *Wilson* was different from the present case, because it concerned whether the employer properly terminated TTD under *former* OAR 436-60-030(5), in contrast to this case, where the issue is whether employer must begin paying TTD. However, the arguments that we considered were similar:

> "Claimant argues that he did not impermissibly refuse wage earning employment, because it would have been unreasonable for him to cross the picket line. He also argues that he could not be penalized with a loss of TTD benefits, because his refusal to report for work resulted from his participation in a labor dispute. Employer argues that it is irrelevant why claimant refused to work. It contends that, if approved work was available, claimant had to accept that work, unless his refusal was legally justified." 110 Or App at 75. (Footnote omitted.)

We agreed with the employer's argument, concluding:

> "The legislature intended temporary disability benefits to provide replacement for wages lost because of a compensable injury. *Cutright v. Weyerhaeuser Co.*, 299 Or 290, 296, 702 P2d 403 (1985). In the absence of a legislative direction to the contrary, TTD benefits are not available if the loss results from other than the compensable injury. When a claimant refuses physician approved modified work under

*former* OAR 436-60-030(5), resulting wage loss is not caused by the compensable injury. Therefore, unless the legislature authorized that refusal, wage loss benefits are not available." 110 Or App at 75.

As we noted in *Wilson*, there are instances in which the legislature has expressly declared that workers who participate in labor disputes will not lose specified rights. For example, ORS 656.268(12) provides that, if an attending physician approves a worker's return to work and there is a labor dispute at the worker's place of employment, the worker may refuse to return to work without loss of re-employment rights or vocational assistance. Although there may be sound policy reasons for allowing a worker temporary benefits for disabilities that occur while a worker is on strike, the legislature has not provided for them. We conclude that the Board erred in allowing TTD benefits during the strike period.

Reversed.